Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Apelado<br><br>vs.<br><br>Francheska Rodríguez Guzmán<br><br>Apelante | KLAN202301115 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Crim. Núm.: I1CR202200236<br><br>Sobre: Art. 108 Código Penal |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de mayo de 2025.

Comparece ante nos, la señora Francheska Rodríguez Guzmán (Sra. Rodríguez Guzmán o apelante), quien presenta recurso de apelación solicitando la revocación de la "Sentencia" emitida el 8 de noviembre de 2023,[1] por el Tribunal de Primera Instancia, Sala de Mayagüez. Mediante dicho dictamen, el foro primario declaró culpable a la apelante por el delito de agresión, tipificado en el Art. 108 del Código Penal de Puerto Rico, *infra*, y le condenó al pago de $400.00 de multa o un día de cárcel por cada $50.00 dejados de satisfacer.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, confirmamos el dictamen apelado mediante los fundamentos que expondremos a continuación.

**I.**

El 18 de septiembre de 2022, se presentó una "Denuncia" contra la Sra. Rodríguez Guzmán por hechos cometidos el 13 de mayo de 2022. Esencialmente, se le imputó infringir el Art. 108

---
[1] Notificada el 26 de septiembre de 2022.

Número Identificador

SEN2025 _____

del Código Penal de Puerto Rico, 33 LPRA sec. 5161, tras agredir intencionalmente a la señora Lidia E. Matos en el área de la cara con un teléfono celular. En esa misma fecha, se celebró una vista para la determinación de causa probable, donde un magistrado determinó causa probable para arresto.[2] Tratándose de un delito menos grave, la apelante fue citada para la celebración del juicio en su fondo.

Así las cosas, el 15 de noviembre de 2022, la Sra. Rodríguez Guzmán presentó una moción solicitando se le ordene al Ministerio Público proveer cierta prueba documental, al amparo de la Regla 95 de Procedimiento Criminal, 34 LPRA Ap. II, R. 95. Entre otras cosas, solicitó cualquier declaración jurada o no, de los testigos de cargo.[3]

El 20 de diciembre de 2022, el Ministerio Público contestó la solicitud de la apelante.[4] En lo concerniente, manifestó que "no se tomaron declaraciones juradas".[5] A su vez, el Estado peticionó su propio descubrimiento de prueba.

El juicio se celebró los días 9 de mayo de 2023, 13 de septiembre de 2023, 30 de octubre de 2023, 6 de noviembre de 2023 y 8 de noviembre de 2023. La prueba del Ministerio Público consistió en tres testigos, a saber: (1) el señor Ángel Jusino Vélez, (2) la señora Yarishka Segarra Sánchez, y (3) la señora Julia González Cortés. Además, presentó varias fotos como evidencia documental.

En la vista celebrada el 13 de septiembre de 2023, mientras la defensa contrainterrogaba a la segunda testigo del Estado, o sea, la señora Yarishka Segarra Sánchez, ésta declaró haber preparado un escrito con relación al presente caso. La representación legal

---

[2] Véase, Regla 6 de Procedimiento Criminal, 34 LPRA Ap. II, R. 6.
[3] Véase, "Moción al amparo de la Regla 95 de Procedimiento Criminal y del Debido Procedimiento de Ley" a la pág. 2; autos originales a la pág. 17.
[4] Véase, "Contestación a Moción sobre Regla 95 de Procedimiento Criminal"; autos originales a la pág. 25.
[5] Íd.

de la Sra. Rodríguez Guzmán manifestó que dicho escrito no se le entregó en el descubrimiento de prueba. A consecuencia de ello, solicitó la aplicación de la presunción dispuesta en la Regla 304 (5) de Evidencia, 32 LPRA Ap. VI, R. 304 (5), la cual dispone que toda evidencia voluntariamente suprimida resultará adversa a la parte que no la ofreció. El Ministerio Público negó conocer la existencia del escrito mencionado por la apelante, y comentó que el único informe sobre el cual tenía conocimiento, es decir, el informe de *Cost Control Company*, se le entregó a la defensa.

Ante este suceso, el Tribunal suspendió los procedimientos y concedió una oportunidad al Estado para corroborar el suceso con el informe aludido. El caso se llamó nuevamente en la tarde, y la defensa reiteró su planteamiento en cuanto al descubrimiento de prueba. Tras de escuchar al Ministerio Público, el propio Tribunal interrogó a la testigo y, luego de aquilatar su testimonio y las posturas de ambas partes, determinó concederle al Estado un plazo de 15 días para obtener y enviar a la defensa el informe en controversia. Asimismo, y con el fin de conceder oportunidad para oponerse a los referidos informes, otorgó a la defensa un plazo de 15 días para informar la necesidad de abrir una línea de preguntas con relación a los testimonios que ya se habían presentado. Por lo tanto, transfirió la continuación del juicio para el mes de octubre de 2023.

El 29 de septiembre de 2023, el Ministerio Público presentó un escrito informando al Tribunal el hecho de que ya se le había enviado a la defensa el informe requerido.[6] Posteriormente, el 18 de octubre de 2023, la Sra. Rodríguez Guzmán radicó una moción solicitando la eliminación del testimonio de la señora Yarishka

---

[6] Véase, "Moción en Cumplimiento de Orden"; autos originales a la pág. 91.

Segarra Sánchez.  En síntesis, sostuvo que se le violentó su debido proceso ley.[7]

Mediante "Orden" emitida el 20 de octubre de 2023,[8] el foro apelado declaró No Ha Lugar la petición de la apelante.  La Sra. Rodríguez Guzmán no recurrió de esta determinación.  El Tribunal reiteró su determinación en la vista del 23 de octubre de 2023.[9]

Llamado el caso para la continuación del juicio en su fondo, el 30 de octubre de 2023, la representación legal de la Sra. Rodríguez Guzmán solicitó, en corte abierta, la reconsideración a su solicitud de que se elimine el testimonio de la testigo Yarishka Segarra Sánchez.  Dicha petición se declaró No Ha Lugar.[10]  No se solicitó la revisión de esta determinación.

El juicio continuó hasta el 8 de noviembre de 2023.  Tras evaluar la totalidad de la prueba presentada, el Tribunal de Primera Instancia declaró culpable a la Sra. Rodríguez Guzmán por el delito de agresión.  Mediante "Sentencia" emitida el 8 de noviembre de 2023,[11] el foro *a quo* condenó a la apelante al pago de $400.00 de multa o un día de cárcel por cada $50.00 dejados de satisfacer.

En desacuerdo con el dictamen, la Sra. Rodríguez Guzmán recurre ante este foro apelativo intermedio señalando la comisión de los siguientes errores:

> a) *Incidió el Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Mayagüez, al no ordenar la eliminación de cierta prueba testifical, a pesar de que el Ministerio Público no le entregó a la defensa oportunamente prueba necesaria para la confrontación de dicha prueba y otra prueba testifical presentada, violentándole de esa forma el derecho constitucional de confrontación de testigos y de representación legal adecuada y eficiente.*

---

[7] Véase, "Moción en Solicitud se Elimine Testimonio por Violación al Debido Proceso de Ley"; autos originales a la pág. 107.
[8] Notificada ese mismo día.
[9] Véase, "Minuta/Resolución" notificada el 25 de octubre de 2023; autos originales a la pág. 114.
[10] Véase, "Minuta" transcrita el 30 de octubre de 2023; autos originales a la pág. 117.
[11] Notificada el 27 de noviembre de 2023.

b) *Incidió el Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Mayagüez, al declarar culpable y convicta a la acusada del delito imputado, a pesar de que la prueba de cargo no estableció su culpabilidad más allá de duda razonable y fundada, en violación al derecho constitucional sobre el debido proceso de ley.*

Presentada y estipulada la transcripción de la prueba oral, la apelante y el Estado presentaron sus correspondientes alegatos, el 13 de marzo de 2025 y el 29 de abril de 2025, respectivamente. Contando con la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

La Constitución de los Estados Unidos y la Constitución de Puerto Rico protegen el derecho de un ciudadano, que es acusado de delito, para confrontar a quienes testifiquen en su contra. Art. II, Sec. 11 Const. ELA, LPRA, Tomo 1; Emda. VI, Const. EE. UU., LPRA, Tomo 1. El derecho al careo, fundamentalmente, tiene tres vertientes procesales: (1) el derecho del acusado a confrontar cara a cara los testigos que declaren en su contra, (2) el derecho a contrainterrogarlos, y (3) el derecho a que se excluya prueba de referencia que se presente por el Ministerio Público.

Esencialmente, las tres matices que surgen de esta garantía constitucional protegen al acusado de distintas maneras. A modo de ejemplo, y para ilustrar lo antes dicho, cuando el acusado está en juicio tiene derecho a carearse con los testigos adversos, o sea, que estos testigos declaren frente al acusado (primera vertiente). Asimismo, el acusado, a través de su representante legal, tendrá la oportunidad de contrainterrogar dichos testigos (segunda vertiente) y, si el Estado presenta en evidencia declaraciones que no fueron hechas por el testigo que está declarando en juicio, las mismas, generalmente, serán excluidas (tercera vertiente). J. Alicea Matías,

Los Derechos de Confrontación y Juicio por Jurado en Tiempos de Pandemia, 60 REV. DER. P.R. 1 (2020). El efecto combinado no es otro que asegurar que la evidencia admitida en contra del acusado sea confiable. *Maryland v. Craig*, 497 US 836 (1990).

Ahora bien, es norma establecida que, aunque fundamental, el derecho de confrontación no es absoluto y admite excepciones. *Pueblo v. Lugo López*, 2024 TSPR 83. Existe vasta jurisprudencia, local y federal, donde el interés del Estado supera y, por tanto, se justifica anteponer consideraciones de política pública sobre la protección constitucional que le asiste al acusado. Véase, *Pueblo v. Cruz Rosario*, 204 DPR 1040 (2020); *Maryland v. Craig*, 497 US 836 (1990). Por otro lado, nuestras Reglas de Evidencia reconocen distintas instancias en las que una declaración no estará sujeta a la regla general de exclusión de prueba de referencia. Véase, por ejemplo, Regla 805 de Evidencia, 32 LPRA Ap. VI, R. 805. Además, el Capítulo V de nuestras Reglas de Evidencia establece límites al contrainterrogatorio de testigos por razón de privilegio, si aplican.

Respecto a segunda vertiente – el derecho a contrainterrogar los testigos adversos – nuestro Tribunal Supremo ha manifestado que, aunque la confrontación cara a cara es valiosa, lo crucial "es que la defensa tenga la oportunidad de contrainterrogar". Véase, *Pueblo v. Cruz Rosario, supra*, a la pág. 1055, citando a *Pueblo v. Stevenson Colón*, 113 DPR 634, 639–640 (1982). Por consiguiente, la presencia del acusado no es indispensable, sino la oportunidad que tiene la defensa para contrainterrogar a esos testigos que les declaran en su contra. Es decir, "el adversario exige confrontación, no con el vano propósito de mirar el testigo, o para que éste lo mire a él, sino con el propósito de contrainterrogatorio". *Pueblo v. Ruiz Lebrón*, 111 DPR 435, 442 (1981). Por ende, el principal y esencial propósito de la confrontación es asegurar que el acusado posea oportunidad de contrainterrogar. *Íd.*

Finalmente, debemos enfatizar que el derecho al careo se activa ante declaraciones que se hacen fuera del juicio y que son de carácter testimonial. Ahora bien, si el declarante está presente en juicio, la cláusula de confrontación se satisface garantizándole al acusado que dicho testigo declare frente a él, y otorgándole la oportunidad para llevar a cabo un contrainterrogatorio sobre esa declaración que se hizo fuera del juicio. *Pueblo v. Guerrido López*, 179 DPR 950 (2010).

**-B-**

El Tribunal Supremo de Puerto Rico ha destacado que, para que se concrete el derecho a la confrontación,

> *[E]l debido proceso de ley exige que se pongan al alcance del acusado los medios de prueba para impugnar los testigos, atacar su credibilidad y todo recurso análogo encaminado a erradicar la falsedad del juicio y evitar el desvío de la justicia. Un careo sin estos instrumentos, cuando sean legítimamente asequibles, frustra el propósito del precepto constitucional. Pueblo v. Cruz Rosario, supra*, a la pág. 1058, citando a *Pueblo v. Guerrido López, supra*, a la pág. 958.

En vista de que nuestra Constitución garantiza el derecho de todo acusado a preparar adecuadamente su defensa, este puede obtener, mediante el descubrimiento de prueba, evidencia que pueda favorecerle. Por lo tanto, el Estado posee la obligación de proporcionar al acusado los medios para atacar la credibilidad de sus testigos. La capacidad del acusado para descubrir prueba es consustancial con el derecho a defenderse adecuadamente. *Pueblo v. Rodríguez González*, 202 DPR 258, 270 (2019).

Para asegurar el fiel cumplimiento de este precepto constitucional, la Regla 95 de Procedimiento Criminal, 34 LPRA Ap. II, R. 95, dispone lo relativo al descubrimiento de prueba a favor del acusado. En lo concerniente, la precitada disposición legal provee para que el acusado presente una moción con el propósito de que el Tribunal ordene al Ministerio Fiscal que le permita inspeccionar, copiar o fotocopiar, entre otras cosas, las

declaraciones juradas de los testigos de cargo que declaran en el juicio, y cualquier otro documento que resulte relevante para preparar la defensa del acusado. *Íd.*

Por otro lado, la Regla 95B de Procedimiento Criminal, 34 LPRA Ap. II, R. 95B, establece lo siguiente:

> *(a) Deber continuo de informar. — Si antes de o durante el juicio, una parte descubre prueba o material adicional al que fue previamente requerido u ordenado, que está sujeto a descubrimiento bajo las Reglas 95 y 95A, dicha parte deberá notificar, tan pronto advenga en conocimiento de la existencia de esa evidencia o material adicional, a la otra parte, al abogado de dicha parte o al tribunal.*
>
> [...]
>
> *(e) Efectos de negarse a cumplir la orden del tribunal. — Si en cualquier momento durante el procedimiento se trae a la atención del tribunal que una parte no ha cumplido con la orden, el tribunal podrá ordenar a dicha parte que permita el descubrimiento o inspección del material o de la información, prohibir que dicha parte presente la prueba no descubierta en el juicio, o podrá emitir aquellas órdenes o remedios que estime necesarios de acuerdo a las circunstancias.*

El derecho del acusado al descubrimiento de prueba no es absoluto, sino que descansa en la sana discreción del tribunal. *Pueblo v. Sanders Cordero*, 199 DPR 827, 835 (2018). A la hora de tomar su decisión los tribunales deben tener en mente que los procedimientos judiciales tienen como meta final que se haga la mejor justicia, fundamentada sobre el esclarecimiento de la verdad. *Pueblo v. Ortiz, Rodríguez*, 149 DPR 363, 383 (1999).

**-C-**

Como regla general, un foro apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). Es decir, los tribunales apelativos deben mantener la deferencia para con la apreciación de la prueba que realiza el Tribunal de Primera Instancia. *McConnell v. Palau*, 161 DPR 734 (2004).

El fundamento de esta deferencia hacia el Tribunal de Primera Instancia consiste en que el juez del foro primario tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor posición que el tribunal apelativo para considerarla. *Sepúlveda v. Depto. de Salud*, 145 DPR 560, 573 (1998). El Tribunal Supremo de Puerto Rico ha resuelto que es el juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que fue quien observó y escuchó a los testigos. *Argüello v. Argüello*, 155 DPR 62, 79 (2001). Esto es así, pues, como nos afirma el tratadista Cuevas Segarra, el juez sentenciador ante quien deponen los testigos es quien tiene la oportunidad de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su consciencia la convicción en cuanto a si dicen la verdad. J.A. Cuevas Segarra, Tratado de Derecho Civil. San Juan, Pubs. JTS, T. II, pág. 685 (2000).

Por ende, el tribunal revisor no intervendrá con la apreciación de la prueba hecha por el juzgador de los hechos, salvo que exista error manifiesto, pasión, prejuicio o parcialidad. *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011). Lo anterior se fundamenta en que, de ordinario, "solo tenemos récords mudos e inexpresivos". *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 987 (2010). Sin embargo, nuestro Tribunal Supremo ha expresado que esta norma no es absoluta. *Méndez v. Morales*, 142 DPR 26, 36 (1996). Así, cuando el foro primario realice una apreciación errónea de la prueba, su determinación estará sujeta a la facultad revisora de los foros apelativos. *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 DPR 702, 712 (1990). De ese modo, los tribunales apelativos intervendrán cuando la apreciación de la prueba no represente el balance más racional,

justiciero y jurídico de toda la evidencia recibida. *Méndez v. Morales*, *supra*, a la pág. 36.

**III.**

Según surge del tracto procesal discutido, el Tribunal de Primera Instancia declaró culpable a la Sra. Rodríguez Guzmán por el delito de agresión. Como ya explicamos, durante el juicio salió a relucir que la segunda testigo del Estado, o sea, la señora Yarishka Segarra Sánchez, había preparado una declaración por escrito con relación al presente caso. La defensa manifestó que la aludida declaración no se le entregó como parte del descubrimiento de prueba.

En su recurso, la Sra. Rodríguez Guzmán sostiene que el foro primario incidió al negarse eliminar el testimonio de Yarishka Segarra Sánchez, a pesar de que el Ministerio Público no entregó a la defensa oportunamente la declaración que esta había preparado con relación al caso. Alega que, esta evidencia era necesaria para contrainterrogar a la testigo, y que no entregársela le violentó sus derechos de confrontación y representación legal adecuada.

Por su parte, el Estado enfatiza que la determinación del foro apelado es correcta, toda vez que: (1) se le entregó la declaración a la representación legal de la apelante, (2) se le concedió un término para prepararse adecuadamente, y (3) se le otorgó oportunidad de contrainterrogar sobre la declaración en controversia.

Tras un análisis del derecho aplicable, dictaminamos que el foro *a quo* actuó correctamente al negarse eliminar el testimonio de Yarishka Segarra Sánchez. **En el presente caso**, **el Tribunal no solo tomó las medidas adecuadas para poner al alcance de la defensa la declaración recién descubierta**, **sino que también le concedió oportunidad para prepararse**, **impugnar a la testigo y atacar su credibilidad mediante contrainterrogatorio**.

Lo cierto es que, al amparo de la Regla 95 de Procedimiento Criminal, *supra*, la apelante presentó una moción solicitando las declaraciones juradas o no, de los testigos de cargo.[12] No obstante lo anterior, de la "Minuta/Orden" de la vista del 13 de septiembre de 2023, se desprende que, cuando la representación legal de la apelante hizo el planteamiento sobre el descubrimiento de prueba, **el Ministerio Público negó tener conocimiento sobre la aludida declaración**, **y esgrimió que se trataba de prueba nueva que no estaba en sus manos**.[13] **Esta alegación no se ha controvertido**.

Conforme la Regla 95B de Procedimiento Criminal, *supra*, si durante el juicio alguna de las partes descubre prueba adicional al que fue previamente requerido, dicha parte deberá notificar, tan pronto advenga en conocimiento de esa evidencia, a la otra parte o al tribunal. Somos del criterio que **el Ministerio Público cumplió con su deber continuo de informar**.

En el presente caso, el Tribunal, luego de ordenar un receso y escuchar los argumentos de ambas partes, concedió al Estado un término de 15 días para obtener y enviar a la defensa el informe en controversia.[14] Por ello, transfirió la vista en su fondo para el 23 de octubre de 2023.[15] En cumplimiento con dicha orden, el 29 de septiembre de 2023, el Ministerio Público informó haber enviado la declaración.[16] Tal hecho es reconocido por la propia apelante.[17] El juicio en su fondo continuó el 30 de octubre de 2023, y se le otorgó oportunidad a la representación legal de la apelante para abrir la línea de contrainterrogatorio sobre el particular.[18]

Sin dudas, este tracto demuestra que el Tribunal, dentro de su sana discreción, emitió aquellas órdenes que estimó necesarias

---

[12] Véase, "Moción al amparo de la Regla 95 de Procedimiento Criminal y del Debido Procedimiento de Ley" a la pág. 2; autos originales a la pág. 17.
[13] Véase, autos originales pág. 89.
[14] *Íd.*
[15] *Íd.*
[16] Véase, "Moción en Cumplimiento de Orden"; autos originales pág. 91.
[17] Véase, "Moción en Solicitud de Término"; autos originales pág. 100.
[18] Véase, "Minuta"; autos originales pág. 117.

de acuerdo con las circunstancias, garantizándole a la acusada su debido proceso de ley. El Estado en ningún momento se negó a permitir el descubrimiento, sino que, entregó el informe tan pronto salió a relucir la existencia de la declaración. Además, la defensa tuvo amplia oportunidad para examinarla y prepararse en vista de la oportunidad que se le anticipó de contrainterrogar a la testigo sobre esa declaración. Adicionalmente, la testigo Yarishka Segarra Sánchez estuvo presente en juicio, testificó frente a la acusada y estuvo disponible para ser confrontada y contrainterrogada por el acusado o su defensa. Ante estas circunstancias, **concluimos que la cláusula de confrontación se satisfizo y que la apelante tuvo una representación legal adecuada**. Por tanto, no se cometió el primer error.

En su segundo y último señalamiento de error, la apelante argumenta que el Tribunal de Primera Instancia erró al declarar culpable a la apelante, a pesar de que la prueba no estableció su culpabilidad más allá de duda razonable. Esencialmente, expone que el Estado no logró probar su caso más allá de duda razonable porque no demostró el elemento subjetivo de intención que exige el delito por el cual se le declaró culpable.

En resumidas cuentas, la apelante sostiene que su intención era volver a entrar al edificio, y que nada en su comportamiento indica que tuvo la intención de agredir a nadie. Por el contrario, el Estado se reafirma en que los testimonios presentados son claros y demuestran que la apelante empujó y golpeó intencionalmente a la perjudicada.

Tras un análisis objetivo y sereno de la prueba testifical que se desfiló ante el Tribunal de Primera Instancia, determinamos que los testimonios en controversia, efectivamente, probaron cada uno de los elementos del delito imputado. Veamos.

El primer testigo en declarar fue **Ángel Jusino Vélez**, quien declaró ser el subadministrador del residencial, Extensión Sábalos Garden.[19] Además, afirmó que, si a una persona va a adquirir una vivienda en Sábalos Garden, ya sea por acomodo razonable o un traslado normal, tiene que ser aprobada por el departamento del traslado.[20] Testificó que, una vez está aprobado, entonces aparece el nombre del residente y se puede firmar el contrato y lo demás.[21] Sin embargo, destacó que, para la fecha del 13 de mayo del 2022, el traslado de la apelante no estaba aprobado en el sistema.[22] Por el contrario, indicó que la mudanza estaba programada para el lunes.[23] Con relación a la apelante, expresó que, el 13 de mayo del 2022, este se personó a su oficina a las 4:50pm aproximadamente, y comenzó a solicitar las llaves de un apartamento.[24] Añadió que no pudo entregarle las llaves, toda vez que ella todavía no estaba aprobada en el sistema, o sea, que todavía aparecía como residente de Columbus Landing.[25] Procedió a orientarla respecto a que ella no estaba aprobada todavía y que, según se le instruyó, no podía entregarle las llaves.[26] Subrayó que, debido a esto, la apelante se alteró bastante y comenzó a golpear el *counter* de la oficina.[27] Luego, la Sra. Rodríguez Guzmán exclamó que "no se iba de allí sin las llaves",[28] y en un momento dado se tiró al suelo frente a los portones del centro comunal.[29] Declaró que, ante tal descontrol, salió a orientar a la apelante e indicarle nuevamente que no se le podían dar las llaves, pero esta última se puso agresiva, a llorar y

---

[19] Véase, Transcripción de la Prueba Oral (TPO) de la vista del 9 de mayo de 2023, a la pág. 5, líneas 10 y 11.
[20] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 7, líneas 8-18.
[21] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 9, líneas 16-20.
[22] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 8, líneas 25-31; pág. 9, líneas 1-3.
[23] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 10, líneas 24-28.
[24] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 11, líneas 1-8.
[25] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 11, líneas 17-22.
[26] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 12, líneas 1-13.
[27] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 12, líneas 19-29.
[28] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 13, líneas 10-13.
[29] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 16, líneas 18-22; pág. 17, líneas 27-29.

gritar.[30] Posteriormente, se comunicó por teléfono celular con la administradora de Columbus Landing.[31] Testificó que la apelante salió del edificio y, cuando la señora Lidia Matos se proponía cerrar el portón de la entrada, observó a la apelante empujar y darle con el teléfono celular a la señora Lidia Matos encima del ojo.[32] Dijo que la Sra. Rodríguez Guzmán empujó para entrar nuevamente al edificio, y luego agrede con el teléfono a la señora Lidia Matos.[33] Describió el impacto como uno fuerte,[34] que provocó que el cuello de la señora Lidia Matos se girase hacia atrás y causándole un moretón en el ojo.[35] Esbozó que la señora Lidia Matos no pudo ir a trabajar porque estaba asistiendo al médico y al fondo por causa del hematoma.[36]

En el contrainterrogatorio, admitió que el apartamento en controversia estaba disponible para ocupar desde el 12 de mayo de 2023.[37] Asimismo, reconoció que el inspector fue al apartamento en controversia el 9 de mayo de 2023 a verificar si había luz, y que el propósito de corroborar si había luz era para entonces entregar la llave del apartamento.[38] Sin embargo, declaró que, cuando la apelante llegó donde él, este le indicó que no tenía autorización para entregar las llaves.[39] Afirmó que, cuando la Sra. Rodríguez Guzmán se alteró, él intento ser mediador ante la conducta de ella, pero que no llamó a la policía en ese momento.[40] Recalcó que la apelante se tiró al piso y que estaba molesta y llorando.[41] También manifestó que la Sra. Rodríguez Guzmán quería entrar cuando se

---

[30] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 25, líneas 11-16.
[31] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 13, líneas 14-23; pág. 25, líneas 21-26.
[32] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 26, líneas 25-31; pág. 27, líneas 1-12 y 19-23.
[33] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 27, líneas 24-31; pág. 28, líneas 1-14.
[34] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 28, líneas 18-24.
[35] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 29, líneas 19-28.
[36] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 30, líneas 23-25.
[37] Véase, TPO de la vista del 9 de mayo de 2023, a la pág. 34, líneas 7-27; TPO de la vista del 13 de septiembre de 2023, a la pág. 44, líneas 1-17.
[38] TPO de la vista del 13 de septiembre de 2023, a la pág. 48, líneas 22-31; pág. 49, líneas 1-5.
[39] TPO de la vista del 13 de septiembre de 2023, a la pág. 49, líneas 18-20.
[40] TPO de la vista del 13 de septiembre de 2023, a la pág. 52, líneas 5-12.
[41] TPO de la vista del 13 de septiembre de 2023, a la pág. 53, líneas 11-17.

percata que la señora Lidia Matos está cerrando el portón.[42]  Al preguntársele si sabía si la apelante iba a agredir directamente a la señora Lidia Matos, dijo que "[e]lla la empujó" y,[43] con el teléfono en la mano, le tira "como látigo".[44]  Reconoció que la señora Lidia Matos y la apelante no habían tenido ninguna situación antes del altercado,[45] y admitió que, mientras manejaba la situación, la Sra. Rodríguez Guzmán no lo agredió.[46]

En el redirecto, y en lo concerniente, acentuó que la apelante empujó a la señora Lidia Matos y la agredió con su celular.[47]  A su vez, aclaró que no había llamado a la policía antes porque creía que la apelante se iba a controlar e iba a cooperar.[48]

En el recontrainterrogatorio mencionó que la Sra. Rodríguez Guzmán fue quien inició el incidente, que estaba llorando, tenía coraje y estaba alterada.[49]

La segunda testigo del Estado fue **Yariska Segarra Sánchez,** quien declaró que se desempeñaba como oficinista a la fecha del incidente.[50]  Testificó que la apelante se personó alrededor de las 5:00pm certificando que la vivienda tenía luz.[51]  Escuchó cuando el señor Ángel Jusino Vélez le indicó que el cambio no iba a ser posible ese día, y que la apelante se alteró porque ella quería que la mudanza se programara ese mismo día.[52]  Manifestó que la Sra. Rodríguez Guzmán no quería salir del lobby, decía que no se iba a ir y que iba a llamar a la prensa.[53]  Expresó que la apelante estaba alterada y que salió del lobby.[54]  Comentó que el hijo de la apelante

---

[42] TPO de la vista del 13 de septiembre de 2023, a la pág. 54, líneas 12-14.
[43] TPO de la vista del 13 de septiembre de 2023, a la pág. 58, líneas 28-31.
[44] TPO de la vista del 13 de septiembre de 2023, a la pág. 59, líneas 1-16.
[45] TPO de la vista del 13 de septiembre de 2023, a la pág. 59, líneas 17-19.
[46] TPO de la vista del 13 de septiembre de 2023, a la pág. 59, líneas 20-23.
[47] TPO de la vista del 13 de septiembre de 2023, a la pág. 66, líneas 7-12.
[48] TPO de la vista del 13 de septiembre de 2023, a la pág. 66, líneas 28-31; pág. 67, línea 1.
[49] TPO de la vista del 13 de septiembre de 2023, a la pág. 68, líneas 15-22.
[50] TPO de la vista del 13 de septiembre de [2]023, a la pág. 69, líneas 18-23.
[51] TPO de la vista del 13 de septiembre de 2023, a la pág. 70, líneas 9-10.
[52] TPO de la vista del 13 de septiembre de 2023, a la pág. 71, líneas 12-23.
[53] TPO de la vista del 13 de septiembre de 2023, a la pág. 71, líneas 23-25.
[54] TPO de la vista del 13 de septiembre de 2023, a la pág. 73, líneas 25-30.

estuvo afuera con ella.[55] Sostuvo que procedió a cerrar el portón junto con la señora Lidia Matos y que, cuando la Sra. Rodríguez Guzmán se percata, esta procede a tratar de entrar nuevamente al lobby.[56] Destacó que en este momento fue que la apelante agrede con su celular a la señora Lidia Matos.[57] Hizo hincapié en que la Sra. Rodríguez Guzmán tenía "la intención de volver a entrar al lobby".[58] Aseveró que la apelante agredió a la señora Lidia Matos, y que la agredió en el ojo "así hacia atrás".[59] Mencionó que, luego de la agresión, el ojo se puso hinchado y con un moretón.[60] Tras preguntársele de qué manera fue el golpe, esta dijo: "intencional".[61] Sobre este aspecto, manifestó que le consta que fue intencional porque, luego de la agresión, ella se metió al medio para que no se siguiera golpeando a la señora Lidia Matos.[62] Indicó que la actitud alterada y agresiva de la apelante, así como sus gestos y manoteos, le hicieron pensar que continuaría agrediendo a la señora Lidia Matos.[63] Destacó que esta última se mareó como consecuencia del golpe,[64] y que su ojo estaba hinchado y de color violeta.[65]

Durante el contrainterrogatorio, y en lo pertinente, señaló que la señora Lidia Matos estaba detrás de la apelante cuando esta le da con su teléfono.[66] Por ende, declaró que no podía decir que la apelante sabía que el ojo estaba allí, ni tampoco que sabía que le iba a dar a la señora Lidia Matos.[67] Negó conocer si la razón de la molestia de la Sra. Rodríguez Guzmán se debía a que se iba a que no tenía agua ni luz.[68] Además, testificó que, antes de que la Sra. Rodríguez Guzmán moviera el brazo hacia atrás, ya la señora Lidia

---

[55] TPO de la vista del 13 de septiembre de 2023, a la pág. 73, línea 31; pág. 74, línea 1.
[56] TPO de la vista del 13 de septiembre de 2023, a la pág. 74, líneas 3-13.
[57] TPO de la vista del 13 de septiembre de 2023, a la pág. 74, líneas 22-26.
[58] TPO de la vista del 13 de septiembre de 2023, a la pág. 75, líneas 7-13.
[59] TPO de la vista del 13 de septiembre de 2023, a la pág. 75, líneas 16-21.
[60] TPO de la vista del 13 de septiembre de 2023, a la pág. 76, líneas 7-12.
[61] TPO de la vista del 13 de septiembre de 2023, a la pág. 76, líneas 13-14.
[62] TPO de la vista del 13 de septiembre de 2023, a la pág. 78, líneas 10-18.
[63] TPO de la vista del 13 de septiembre de 2023, a la pág. 78, líneas 19-25.
[64] TPO de la vista del 13 de septiembre de 2023, a la pág. 79, líneas 8-10.
[65] TPO de la vista del 13 de septiembre de 2023, a la pág. 82, líneas 3-7.
[66] TPO de la vista del 13 de septiembre de 2023, a la pág. 89, líneas 26-30.
[67] TPO de la vista del 13 de septiembre de 2023, a la pág. 90, líneas 1-6.
[68] TPO de la vista del 13 de septiembre de 2023, a la pág. 91, líneas 11-25.

Matos estaba en el portón y en ningún momento se movió de ahí.[69] En cuanto a si el golpe fue intencional, comentó que ella sabía que era intencional porque, si no se metía en el medio, la apelante iba a seguir dándole a la señora Lidia Matos.[70] Expresó saberlo porque la apelante "estaba manoteando".[71]

En el recontrainterrogatorio, dijo que "doña Lidia estaba allí, ella la vio", por lo que tenía intención de darle.[72] Empero, indicó que, cuando ella se metió en el medio, la apelante no la agredió.[73] También, admitió que del informe que preparó no surge expresión alguna de que el golpe que profirió la apelante fuese intencional.[74] Tampoco se desprende del informe que la Sra. Rodríguez Guzmán estuviese manoteando,[75] o que esta actuó intencionalmente porque seguiría agrediendo a la señora Lidia Matos si ella no se metía.[76] Al confrontársele con esto, manifestó que dichos detalles no eran importantes por tratarse de un informe interno.[77] Sobre el menor, reconoció que del informe no surge que este hubiese salido con su mamá, ni que él no estuviese en el área de administración.[78]

En el redirecto, al preguntársele sobre el por qué no surge del informe que el golpe haya sido intencional, la testigo declaró que "[l]o describí de otra manera".[79]

La tercera testigo del Estado fue la señora **Lidia Matos del Toro**, contable de *Cost Control Company*.[80] Testificó que, el 13 de mayo del 2022, la Sra. Rodríguez Guzmán se personó a la oficina de administración del residencial como a las 5:00pm.[81] Comentó que fue ella quien recibió a la apelante, y que esta última le

---

[69] TPO de la vista del 13 de septiembre de 2023, a la pág. 93, líneas 15-25.
[70] TPO de la vista del 13 de septiembre de 2023, a la pág. 93, líneas 24-28.
[71] TPO de la vista del 13 de septiembre de 2023, a la pág. 93, líneas 29-31.
[72] TPO de la vista del 13 de septiembre de 2023, a la pág. 94, líneas 9-12.
[73] TPO de la vista del 13 de septiembre de 2023, a la pág. 96, líneas 18-22.
[74] TPO de la vista del 30 de octubre de 2023, a la pág. 123, líneas 1-3.
[75] TPO de la vista del 30 de octubre de 2023, a la pág. 123, líneas 4-7.
[76] TPO de la vista del 30 de octubre de 2023, a la pág. 123, líneas 13-19.
[77] TPO de la vista del 30 de octubre de 2023, a la pág. 124, líneas 16-23.
[78] TPO de la vista del 30 de octubre de 2023, a la pág. 125, líneas 28-31; pág. 126, líneas 1-4.
[79] TPO de la vista del 30 de octubre de 2023, a la pág. 132, líneas 13-15.
[80] TPO de la vista del 30 de octubre de 2023, a la pág. 133, líneas 18-23.
[81] TPO de la vista del 30 de octubre de 2023, a la pág. 134, líneas 9-19.

expresó que venía a buscar las llaves.[82]  Señaló que fue donde el señor Ángel Jusino Vélez, quien le verbalizó a la apelante que la entrega de las llaves no era posible hasta que se hiciera el cambio de residencial.[83]  Cuando se le menciona que el cambio no será posible, la apelante se alteró y comenzó a gritar que no se iba hasta que le dieran las llaves del apartamento.[84]  Luego, se sentó en el suelo, se agarró de la reja y dijo que llamaría a la prensa.[85]  Aseveró que, posteriormente, como la apelante salió de la oficina, ella se dirigió a cerrar el portón.[86]  Sostuvo que, mientras estaba de espaldas, la Sra. Rodríguez Guzmán la empuja, la saca del área del portón y "lo único que yo sentí fue el cantazo cuando me dio en la frente" con el celular.[87]  Sintió un dolor inmenso en el ojo y el cuello.[88]  Afirmó que se iba a desplomar y que la señora Yariska Segarra Sánchez "se mete en el medio y me aguanta".[89]  Manifestó que, al verificarse el área, tenía el ojo hinchado.[90]

En el contrainterrogatorio, destacó que, cuando la apelante le requirió las llaves, no hubo ninguna situación entre ellas.[91]  En lo que nos concierne, expresó que la apelante decide salir del *lobby* y que, al percatarse de eso, ella se dispuso a cerrar el portón.[92]  Indicó que estaba de espalda porque estaba cerrando el portón.[93]  Subrayó que, como estaba de espaldas, desconoce con qué parte del cuerpo la apelante la tocó.[94]  Por tanto, no sabe de qué manera es que le dan a ella, sino que solo sintió el cantazo.[95]  Aseveró que desconocía las intenciones de la Sra. Rodríguez Guzmán, y si esta

---

[82] TPO de la vista del 30 de octubre de 2023, a la pág. 135, líneas 27-31.
[83] TPO de la vista del 30 de octubre de 2023, a la pág. 136, líneas 1-8.
[84] TPO de la vista del 30 de octubre de 2023, a la pág. 137, líneas 9-23; pág. 138, líneas 22-28; pág. 145, líneas 9-12.
[85] TPO de la vista del 30 de octubre de 2023, a la pág. 146, líneas 11-14.
[86] TPO de la vista del 30 de octubre de 2023, a la pág. 146, líneas 18-22.
[87] TPO de la vista del 30 de octubre de 2023, a la pág. 146, líneas 23-28.
[88] TPO de á la vista del 30 de octubre de 2023, a la pág. 147, líneas 10-15.
[89] TPO de la vista del 30 de octubre de 2023, a la pág. 147, líneas 26-31.
[90] TPO de la vista del 30 de octubre de 2023, a la pág. 149, líneas 3-9.
[91] TPO de la vista del 6 de noviembre de 2023, a la pág. 162, líneas 20-24.
[92] TPO de la vista del 6 de noviembre de 2023, a la pág. 168, líneas 19-28.
[93] TPO de la vista del 6 de noviembre de 2023, a la pág. 169, líneas 2-14.
[94] TPO de la vista del 6 de noviembre de 2023, a la pág. 169, líneas 25-28.
[95] TPO de la vista del 6 de noviembre de 2023, a la pág. 170, líneas 13-16.

venía a agredirla a ella.[96]  Además, dijo que, cuando se tambaleó, la señora Yariska Segarra Sánchez la aguanta para evitar que se cayera.[97]

En el redirecto, reafirmó que no podía ver a la apelante debido a que estaba de espaldas cerrando el portón.[98]  Aclaró que, aunque desconocía cuales eran sus intenciones, la Sra. Rodríguez Guzmán la empujó y después le profirió un cantazo en esta área del ojo.[99]  A su vez, acentuó que, cuando se tambaleó para caerse, la señora Yariska Segarra Sánchez se metió en el medio de las dos.[100]  Esbozó que, aunque no había tenido ningún problema con la apelante, fue esta quien la agredió.[101]

En el contrainterrogatorio, al preguntársele si le podía decir al tribunal que eso era un accidente, esgrimió que "eso no fue un accidente".[102]  Sin embargo, se reafirmó en que no vio cómo fue que sucedió el incidente porque estaba de espaldas.[103]

La última testigo del Ministerio Público fue la señora **Julia González Cortés** quien, al momento de los hechos, era asistente administrativo en *Cost Control Company*.[104]  Declaró estar presente el día de los hechos,[105] y que cuando se disponían a salir, la Sra. Rodríguez Guzmán no se iba del área.[106]  Testificó que la apelante estaba alterada con un tono de voz fuerte y molesto, [107] y que amenazaba con llamar a la prensa si no le entregaban las llaves.[108] Afirmó que en un momento la Sra. Rodríguez Guzmán sale de los predios de la oficina, y que la señora Lidia Matos fue a cerrar el

---

[96] TPO de la vista del 6 de noviembre de 2023, a la pág. 170, líneas 20-29.
[97] TPO de la vista del 6 de noviembre de 2023, a la pág. 171, líneas 2-13.
[98] TPO de la vista del 6 de noviembre de 2023, a la pág. 175, líneas 1-3.
[99] TPO de la vista del 6 de noviembre de 2023, a la pág. 175, líneas 4-9.
[100] TPO de la vista del 6 de noviembre de 2023, a la pág. 176, líneas 2-13.
[101] TPO de la vista del 6 de noviembre de 2023, a la pág. 176, líneas 19-26.
[102] TPO de la vista del 6 de noviembre de 2023, a la pág. 177, líneas 3-5.
[103] TPO de la vista del 6 de noviembre de 2023, a la pág. 177, líneas 7-11.
[104] TPO de la vista del 8 de noviembre de 2023, a la pág. 183, líneas 3-5.
[105] TPO de la vista del 8 de noviembre de 2023, a la pág. 184, líneas 1-3.
[106] TPO de la vista del 8 de noviembre de 2023, a la pág. 185, líneas 12-14.
[107] TPO de la vista del 8 de noviembre de 2023, a la pág. 186, líneas 22-28.
[108] TPO de la vista del 8 de noviembre de 2023, a la pág. 187, líneas 9-17.

portón.[109]  Comentó que ella fue a ayudar a cerrar el portón, y que en eso sintió que la apelante le pasó por el lado corriendo.[110]  Acto seguido, la Sra. Rodríguez Guzmán "se mete entre medio de Lidia y el portón y ahí ella saca la mano y le da con el teléfono celular a la señora Lidia en el área del ojo".[111]  Describiendo el movimiento que hizo la apelante, expresó que "echó la mano para atrás y como que de lado así y le pegó a la señora Matos".[112]  Dijo que, cuando la señora Lidia Matos recibió el impacto, esta perdió su equilibrio y la señora Yariska Segarra Sánchez la aguantó.[113]  Explicó que, tras este suceso, apreció el ojo de la señora Lidia Matos hinchado.[114]

En el contrainterrogatorio, expuso que el tono de la apelante era alto y movía las manos arriba y para los lados.[115]  Estribó que, pudo observar a la Sra. Rodríguez Guzmán cuando le pasó por el lado y que, aunque desconocía su intención, se dirigía al *lobby*.[116]  Añadió que la apelante pasó por debajo del brazo de la señora Lidia Matos,[117] y que hizo un gesto hacia atrás con el teléfono celular en la mano.[118]

En el redirecto, mencionó que, al ocurrir el suceso, observó que la apelante tenía el celular en sus manos.[119]  Asimismo, afirmó que, al darle con el teléfono, la apelante quedó frente a la señora Lidia Matos y luego comenzó a decir "yo no te di, yo no te di, fue tu culpa".[120]

Tras un examen de los testimonios que anteceden, el foro *a quo* declaró culpable a la Sra. Rodríguez Guzmán por el delito de agresión.  En su recurso, la apelante, aunque admite la ocurrencia del incidente, argumenta que no se probó su culpabilidad más allá

---

[109] TPO de la vista del 8 de noviembre de 2023, a la pág. 187, líneas 25-31.
[110] TPO de la vista del 8 de noviembre de 2023, a la pág. 188, líneas 8-12.
[111] TPO de la vista del 8 de noviembre de 2023, a la pág. 188, líneas 13-14.
[112] TPO de la vista del 8 de noviembre de 2023, a la pág. 188, líneas 29-31.
[113] TPO de la vista del 8 de noviembre de 2023, a la pág. 189, líneas 10-13.
[114] TPO de la vista del 8 de noviembre de 2023, a la pág. 189, líneas 16-19.
[115] TPO de la vista del 8 de noviembre de 2023, a la pág. 193, líneas 4-9.
[116] TPO de la vista del 8 de noviembre de 2023, a la pág. 195, líneas 8-16.
[117] TPO de la vista del 8 de noviembre de 2023, a la pág. 195, líneas 17-19.
[118] TPO de la vista del 8 de noviembre de 2023, a la pág. 196, líneas 6-10.
[119] TPO de la vista del 8 de noviembre de 2023, a la pág. 202, línea 31; pág. 203, línea 1.
[120] TPO de la vista del 8 de noviembre de 2023, a la pág. 203, líneas 3-12.

de toda duda razonable porque no se probó el elemento subjetivo del delito, es decir, la intención de cometerlo. No le asiste la razón.

El delito de agresión está tipificado en el Art. 108 del Código Penal de Puerto Rico, *supra*, el cual lee como sigue:

> *Toda persona que ilegalmente, por cualquier medio o forma, cause a otra una lesión a su integridad corporal, incurrirá en delito menos grave.*

Con el propósito de determinar si se establece o no el elemento subjetivo del delito imputado, el juzgador de los hechos debe evaluar "las circunstancias relacionadas con el hecho, la capacidad mental, las manifestaciones y conducta de la persona". Véase, 33 LPRA sec. 5034. No podemos obviar que, para esto, el juzgador evaluó los testimonios de varios testigos que declararon en juicio. Cada uno de ellos identificó a la Sra. Rodríguez Guzmán como la persona que agredió a la señora Lidia Matos, y testificaron sobre las circunstancias del altercado. Específicamente, en cuanto al hecho de que la apelante causó una lesión en el ojo de la señora Lidia Matos, al propiciarle un cantazo con el celular que tenía en sus manos. El juzgador tuvo amplia oportunidad para evaluar las circunstancias anteriores, concomitantes y posteriores, puesto que 4 testigos declararon sobre el suceso.

Recordemos que, como foro revisor, le debemos respeto a la apreciación de la prueba que realiza el juzgador de los hechos en primera instancia, pues es él quien está en especial posición al momento de aquilatar la prueba y los testimonios presentados. Aunque esta deferencia judicial no es absoluta, únicamente cede ante determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. Es decir, cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Negrón Ramírez*, 213 DPR 895, 912 (2024).

Somos del criterio que, en el presente caso, los testimonios de los testigos de cargo evidenciaron, más allá de duda razonable,

que la Sra. Rodríguez Guzmán cometió el delito de agresión. Aquí, quedó meridianamente claro el hecho de que la apelante empujó y agredió a la señora Lidia Matos, ocasionándole una lesión en el ojo. La defensa no pudo demostrar ninguna causa de inimputabilidad o de exclusión de responsabilidad penal, y la prueba que desfiló en juicio evidenció que la actuación se cometió de manera ilegal e intencional. El juzgador de los hechos tuvo oportunidad de ver y escuchar a cuatro testigos que declararon sobre los hechos que ocurrieron el 13 de mayo de 2022. Evaluada la transcripción del juicio, concluimos que no hubo pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba.

**Ante la realidad de que no están presentes ningunas de las excepciones mencionadas**, **este Tribunal de Apelaciones se abstendrá de intervenir con la apreciación de la prueba**. Por lo tanto, concluimos que el segundo error tampoco se cometió.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte del dictamen, confirmamos la "Sentencia" apelada, emitida por el Tribunal de Primera Instancia, Sala de Mayagüez.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones